UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>ARROW LYNN CURRY,<br><br>　　　　　Defendant. | CR. 15-50104-JLV<br><br><br>ORDER |

**INTRODUCTION**

Defendant Arrow Lynn Curry, appearing *pro se*, filed a motion for compassionate release.  (Docket 166).  Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Curry's motion. (Dockets 170 & 172).  For the reasons stated below, defendant's motion is denied.

**STANDING ORDER 20-06**

Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a

---

[1] See https://www.sdd.uscourts.gov/so2006 ("SO 20-06").  SO 20-06 was amended on October 21, 2020, after this case was ripe for resolution.  See https://www.sdd.uscourts.gov/socraa.  The amendments have no impact on the court's analysis of this case.

procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system."  (SO 20-06 at p. 1). Under the order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act."  Id. ¶ 1.

By the standing order, the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]"  Id. ¶ 4.  Those categories are:

> a. High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § l.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .
>
> b. Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.
>
> c. Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.
>
> d. Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id.  The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office."  Id.

2

## MR. CURRY'S CLASSIFICATION

On May 7, 2020, the FPD and the U.S. Attorney filed a notice designating Mr. Curry's case as a Low Priority.  See May 7, 2020, docket entry.

## FACTUAL BACKGROUND

Mr. Curry was found guilty of conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C) on April 20, 2017, after a jury trial.  (Docket 125).  On June 25, 2018, Mr. Curry was sentenced to a term of imprisonment of 96 months followed by three years of supervised release.  (Docket 164 at pp. 2-3).  In a presentence report ("PSR") ordered by the court, Mr. Curry's advisory guideline range was 235 to 293 months based on a total offense level of 34 and his criminal history category V.  (Dockets 163 ¶¶ 41, 61, 95).  The court granted a substantial downward variance in sentence to 96 months after considering Mr. Curry's youth, addiction to methamphetamine and the sentences imposed on co-defendants.  (Docket 165 at pp. 1-3).

Mr. Curry is currently an inmate at USP Big Sandy, a high security facility, in Inez, Kentucky.  Fed. Bureau Prisons, https://www.bop.gov/inmateloc/ (last checked Feb. 9, 2021).  The total inmate population at USP Big Sandy is currently 1,263 persons.  Id. https://www.bop.gov.locations/institutions/bsy/ (last checked Feb. 9, 2021).  As of February 9, 2021, there were six active COVID-19 cases among inmates and 12 among staff, zero deaths as a result of COVID-19, and 78 inmates and 86 staff had recovered

from COVID-19 at USP Sandy. Id. https:www.bop.gov/coronavirus/ (last checked Feb. 9, 2021). Based on these statistics and assuming a static population, over 6.6 percent of the inmates at USP Big Sandy have contracted COVID-19.

Mr. Curry currently has a scheduled release date of February 4, 2023, according to the information available from the Bureau of Prisons ("BOP") online. See https://www.bop.gov/inmateloc/. Records filed with the court show Mr. Curry's release date as December 30, 2022. (Docket 170 at pp. 54-55). The discrepancy between the dates is not specifically explained; however, it appears Mr. Curry may have lost some credits for good conduct time as a result of disciplinary actions. See id. at pp. 50-51, 54-55. Mr. Curry has served approximately 64 months in custody. See id. at p. 56. He is 28 years old. See https://www.bop.gov/inmateloc/.

## MR. CURRY'S MOTION

Mr. Curry's *pro se* motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his conditions of confinement during the COVID-19 pandemic. (Docket 166 at pp. 1-3). Mr. Curry asserts he "is especially vulnerable and is at a higher than average risk of contracting the disease because he is housed in a crowded facility where he has limited ability to take precautionary measures, such as self-isolating, regularly washing or sanitizing hands, or avoiding communal spaces." Id. at p. 1. He requests his sentence be reduced to time served or that he be placed on home

confinement.  Id.  On June 20, 2020, the FPD filed a Notice of Intent Not to Supplement Mr. Curry's *pro se* motion.  See June 2, 2020, docket entry.

Mr. Curry did not identify any health conditions of concern to him during the COVID-19 pandemic, but relies mainly on the conditions of his confinement and inability to follow sanitary and social distancing guidelines. The court reviewed Mr. Curry's medical records and identified the following medical conditions:

- Substance use disorders.  (Docket 170 at p. 32);
- Allergic rhinitis.  Id.;
- Unspecified pain in left knee.  Id.; and
- Hammertoes.  Id. at p. 40.

Mr. Curry is not on any medications, but he has an order for special orthotic shoes.  Id. at p. 43.  As of his last record on September 18, 2019, Mr. Curry is 75 inches tall and weighs 280 pounds.  Id. at pp. 18, 27.  Based on his height and weight, Mr. Curry has a body mass index (BMI) of 35, which qualifies him as obese.  See Adult BMI Calculator, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/ English_bmi_calculator/bmi_calculator.html (last checked Feb. 9, 2021).

## UNITED STATES' OPPOSITION

The government opposes Mr. Curry's motion for compassionate release. (Docket 172).  First, the government argues Mr. Curry has not exhausted his administrative remedies because there is no evidence he made a request to the

warden for compassionate release.  Id. at p. 2.  Second, the government generally asserts that "[t]he existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not by itself . . . provide a basis for a sentence reduction."  Id. at p. 8.  The government urges the court to recognize the significant measures taken by the BOP to address and control the transmission of the coronavirus through a lengthy and detailed six-phase action plan.  Id. at pp. 8-10.

Next, the government argues denial is warranted because Mr. Curry has not demonstrated or identified any medical conditions that put him at risk or explained how COVID-19 has affected those medical conditions.  According to the government, Mr. Curry's conditions do not interfere with his ability to provide self-care while in custody, and his conditions are manageable while in BOP custody.  Id.

Finally, the government argues the 18 U.S.C. § 3553(a) factors weigh against granting Mr. Curry compassionate release.  The government submits Mr. Curry poses a danger to public safety if released.  Id. at p. 16.  Mr. Curry's offense involved drug trafficking, a serious offense by its very nature and one that carried a 20-year mandatory minimum term of incarceration.  Id. at p. 17.  The government argues "the very nature of the crime does not warrant an additional reduction."  Id.

## ANALYSIS

### Administrative Exhaustion

Section 3582(c) permits the district court to consider an inmate's request for compassionate release after he exhausts the administrative remedies mandated by the statute.

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The court concludes Mr. Curry has not exhausted his administrative remedies. There is no evidence Mr. Curry submitted a written request to the warden at USP Big Sandy. See Docket 166. In fact, Mr. Curry requested the court waive the administrative exhaustion requirement in his motion. Id. at p. 1. Presenting a request to the warden is a statutory requirement that the court has no authority to waive. See 18 U.S.C. § 3582(c)(1)(A)(i). Although that failure alone dooms Mr. Curry's motion, the court further concludes Mr. Curry has not demonstrated "extraordinary and compelling" reasons for release.

**Extraordinary and Compelling Reasons**

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020). That task was left to the United States Sentencing Commission. See 28 U.S.C. § 994(t). Prior to the First Step Act, the Sentencing Commission established four categories for "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." See id. Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems extraordinary and compelling. U.S.S.G. § 1B1.13 comment. n.1. The four categories have not been updated since December 2018 when the First Step Act became law.[2]

This court has previously surveyed the status of the law as to a court's authority under the First Step Act. E.g., United States v. Thunder Hawk, 5:14-CR-50008, 2021 WL 253456, at *5 (D.S.D. Jan. 26, 2021); United States v. Magnuson, 5:15-CR-50095, 2020 WL 7318109, at *4-5 (D.S.D. Dec. 11, 2020); United States v. King, 5:15-CR-50050, 2020 WL 6146446, at *4-5 (D.S.D. Oct. 20, 2020).

---

[2]The United States Sentencing Commission lacks a quorum and "currently has only two voting members, two short of the four it needs to amend the [U.S.S.G.]." United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020) (references omitted).

The Second Circuit identified the question at the heart of these cases, which is "whether the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling,' or whether that power remains exclusively with the BOP Director as stated in Application Note 1(D)." United States v. Brooker, 976 F.3d 228, 237, 234 (2d. Cir. 2020). Like the United States Courts of Appeals for the Second, Fourth, Sixth and Seventh Circuits,[3] this court has held it retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." E.g., Magnuson, 2020 WL 7318109, at *5 (quoting Brooker, 976 F.3d at 237); see also McCoy, 981 F.3d at 283 ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction."); United States v. Jones, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); and United

---

[3]The United States Court of Appeals for the Eighth Circuit had several opportunities to address this issue but declined to do so. United States v. Vangh, -- F.3d --, 2021 WL 952580, *3, n.3 (8th Cir. March 15, 2021); United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. 2020) and United States v. Rodd, 966 F.3d 740 (8th Cir. 2020).

States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020) (agreeing with the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion").

The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.

Mr. Curry relies on the conditions of his incarceration during the COVID-19 pandemic as extraordinary and compelling reasons warranting compassionate release.  (Docket 166 at p. 1-3).  Despite the expanded authority under the First Step Act, the court finds Mr. Curry has not met his burden of proof by presenting "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i).

Mr. Curry is 28 years old.  The Centers for Disease Control and Prevention ("CDC") recognizes that the risk of severe illness as a result of COVID-19 increases with age, with older adults at higher risk.  See Older Adults, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (updated Mar. 17, 2021) (last checked Apr. 2, 2021).  The CDC reports eight out of ten COVID-19 deaths are in people 65 years old and older.  Id.  The CDC identifies people age 50-64 as being 25

times more likely to require hospitalization as compared to those age 5-17 years old, though the greatest risk is to those 75 and older. Id.

However, adults of any age are at increased risk of severe illness from COVID-19 if they have certain conditions. Recently, the CDC updated its understanding of the health conditions increasing the risk from COVID-19. See People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (updated Mar. 29, 2021) (last checked Apr. 2, 2021). The CDC now states individuals with the following conditions *can* be more likely to become severely ill from COVID-19: cancer, chronic kidney disease at any stage, chronic lung diseases (including moderate to severe asthma, chronic obstructive pulmonary disease ("COPD"), cystic fibrosis, and pulmonary hypertension), dementia or other neurological conditions, diabetes (type 1 or type 2), heart conditions (such as heart failure, coronary artery disease, cardiomyopathies, or hypertension), HIV infection, immunocompromised state, liver disease, overweight and obesity, being a current or former smoker, history of stroke or cerebrovascular disease, substance abuse disorders and several others. Id.

The CDC's guidance to clinicians explains: "[t]he risk of severe COVID-19 increases as the number of underlying medical conditions increases in an individual." https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (last checked Apr. 2, 2021).

While the court recognizes that, because of obesity, Mr. Curry is at a higher risk of a severe illness from COVID-19 if he were to contract the virus, it cannot conclude that this condition alone is an extraordinary and compelling reason to warrant compassionate release. Mr. Curry himself did not raise this as an issue, though that is not dispositive to the court's analysis. Based on the court's review of his medical records, Mr. Curry appears generally healthy and has had few medical complaints. His medical visits primarily relate to complaints of knee and foot pain and fights with other inmates. (Docket 170 at pp. 8-10, 12-14, 18-19, 23-24, 40-41). The court finds Mr. Curry has not met his burden of proof and presented "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i).

Several courts, including courts in the District of South Dakota, have concluded obesity on its own during the COVID-19 pandemic does not necessarily warrant a reduction in sentence for extraordinary and compelling reasons. See United States v. Williams, CRIMINAL ACTION No. 15-471-3, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020); United States v. McAbee, No. 4:14-CR-40027-01, 2020 WL 5231439, at *3 (D.S.D. Sept. 2, 2020) (finding defendant with asthma and a BMI of 30.8 or 31.7 did not establish extraordinary and compelling reasons); United States v. Saenz, No. 3:10-CR-30027-01, 2020 WL 4347273, at *5 (D.S.D. July 29, 2020) (finding defendant with other medical conditions and a BMI between 40 and 44.9 did not establish extraordinary and compelling reasons).

Mr. Curry's primary concern is the conditions of his confinement. In the time since his motion was filed, however, the BOP has adopted a six-phase modified operation action plan to address and control the transmission of the coronavirus. See BOP: BOP'S COVID-19 Modified Operations, https://www.bop.gov/coronavirus/ (updated Nov. 25, 2020) (last checked Feb. 10, 2021). The court also recognizes the BOP's recent implementation of a COVID-19 vaccination program. Id. BOP: COVID-19 Update, https://www.bop.gov/coronavirus/ (last checked Apr. 2, 2021). As of April 2, 2021, 110,489 doses have been administered system wide. Id.

At USP Big Sandy, 133 staff and 177 inmates have been fully inoculated to date, and those numbers are likely to increase. Id. According to the BOP, those inmates who wish to receive the vaccine will have an opportunity to do so, but

> [w]hen an institution receives an allocation of the vaccine, it is first offered to full-time staff at that location, given that staff - who come and go between the facility and the community - present a higher potential vector for COVID-19 transmission. Vaccinating staff protects fellow staff, inmates at the facility, and the community.

Id.

Based on the court's detailed review of the medical records, Mr. Curry does not have medical health conditions to support "extraordinary and compelling" reasons for compassionate release during the COVID-19 pandemic.

### 3553(a) Factors

Additionally, the court concludes the § 3553(a) factors do not support relief. A detailed analysis of these factors is unnecessary. Suffice it to say,

the court granted a significant downward variance to Mr. Curry at sentencing. The low end of his guideline range was 235 months and the court sentenced him to 96 months.   That sentence was chosen with care to reflect the seriousness of his offense, provide appropriate punishment and acknowledge his youth and methamphetamine addiction as contributing factors.   <u>See</u> Docket 165 at pp. 1-3.   Early release is not warranted.

## ORDER

No good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 166) is denied.

Dated April 6, 2021.

> BY THE COURT:
>
> /s/ *Jeffrey L. Viken*
> JEFFREY L. VIKEN
> UNITED STATES DISTRICT JUDGE